# COURT OF APPEALS OF VIRGINIA

## Record No. 1831-24-1

ALEXANDRIA LINNAE FELDER

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Causey, White and Frucci

Opinion Issued July 28, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Matthew Hoffman, Judge

(Eric Weathers, Assistant Public Defender; Virginia Indigent Defense Commission, on briefs), for appellant.

(Jason S. Miyares,[1] Attorney General; Tanner M. Russo, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

A jury convicted Alexandria Linnae Felder of felonious assault on a law enforcement officer[2] and misdemeanor obstruction of justice by threats or force. The jury sentenced Felder to nine months' incarceration and a $2,500 fine on the assault conviction; on the obstruction conviction, she was sentenced to another $2,500 fine. By separate orders, the trial court imposed the sentences fixed by the jury. On appeal, Felder challenges the sufficiency of the evidence

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] The final sentencing order (dated November 8, 2024) misspelled Felder's first name as "Alexander" instead of "Alexandria." We remand the case to the trial court for the limited purpose of correcting this clerical error. *See* Code § 8.01-428(B) (governing correction of clerical errors by the trial court).

establishing her intent to assault the officer or establishing the use of threats or force to obstruct. Because the record supports the trial court's judgment, we affirm.[3]

BACKGROUND[4]

On April 11, 2022, Newport News Police Officer Zaire Randolph stopped a car driven by Alexandria Linnae Felder because her license plate was attached to a rear headrest, inside the car, and not to the exterior of the car. As he approached the car, he recognized Felder from his dealings with her about ten days earlier and recalled that her driver's license was suspended. The Commonwealth played a video recording from Officer Randolph's body-worn camera for the jury.

As Officer Randolph approached the car, Felder told him that she would not roll down the window. She "put up a piece of paper that had a bunch of Sovereign Citizen ideology on it." Felder told Officer Randolph that she did not use Virginia's "licensing system" and that she was a "sovereign divine being." Officer Randolph "called for additional units to come because [he] knew things possibly would escalate." After "four to five minutes," Sergeant Hayward and other officers arrived. Officer Randolph continued trying to explain to Felder why he stopped her. Felder stated that she did not need a driver's license because "she wasn't driving, she was traveling in her private automobile and that she pretty much doesn't have to conform to Virginia laws."

---

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

[4] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Stilwell v. Commonwealth*, 80 Va. App. 278, 280 n.1 (2024) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "On appeal, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.*

Officer Randolph told Felder "to roll down the window" and "to step out the vehicle," because she was under arrest. Felder stated that "she was not getting out of the car and that she's not under arrest." Sergeant Hayward and Officer Howard each then tried to speak to Felder, in hopes that a "a different approach" might "deescalate the situation that was escalating quickly."[5] Officer Howard testified that Felder briefly rolled down the window "about an inch" to tell the officer that she was a "divine being" and that the driver's license requirement "d[id] not apply to her." Officer Howard also told Felder that she was under arrest, but Felder denied that and still refused to get out of the car.

Sergeant Burke arrived and determined that they would give Felder one more chance to comply or they would "break[] her window and extract[] her from the vehicle." Officer Randolph described such actions a "last resort" but estimated that "[b]etween all the officers on scene," they had tried to get Felder to comply "approximately 20, 25 times." Officers warned Felder three times that they would break her window if she did not comply. Felder ignored the warnings, so Sergeant Burke broke the window with his baton. Both Sergeant Burke and Officer Randolph had warned Felder to protect her eyes. They then "reached in through the driver's window, opened the door and unlocked it and began extracting her from the vehicle."

Felder held on to the steering wheel and locked her legs. After officers succeeded in changing her posture, Felder "was flailing her legs in like a scissor motion" and hit Officer Randolph in his groin with her foot, "hard enough for [him] to feel it." Officer Randolph told her not to kick him, "letting her know that she [had] kicked [him]," which she denied. Felder continued "kicking, flailing her legs."

After police completed the extraction, Felder was handcuffed, lying face down on the ground at the side of her car. She resisted getting into the police car "by kicking her legs."

_____

[5] The other officers' first names are not included in the record.

Police ultimately secured her legs with "kick stops" because Felder "would not stop kicking, we could not properly put her in the vehicle safely and felt like it would be a continual danger to us and possibly herself if she ke[pt] kicking."

## ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). This Court "view[s] video evidence not to determine what we think happened, but for the limited

purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did." *Id.* (second alteration in original).

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000). Any hypothesis of innocence must "flow from the evidence itself, and not from the imaginations of defense counsel." *Cook v. Commonwealth*, 226 Va. 427, 433 (1983). "Indeed, in some cases circumstantial evidence may be the only type of evidence which can possibly be produced." *Stamper v. Commonwealth*, 220 Va. 260, 272 (1979). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

I. Assault and Battery against a law-enforcement officer

By statute, "if any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a law-enforcement officer," then "such person is guilty of a Class 6 felony, and, upon conviction, the sentence of such person shall include a mandatory minimum term of confinement of six months." Code § 18.2-57(C). Felder has not disputed that she knew that Officer Randolph was a law-enforcement officer. The only issue at trial was whether she committed an assault and battery against him.[6]

---

[6] While the jury was instructed both on the elements of simple assault and on the elements of a completed battery, the verdict form recites only that it found Felder guilty of "[a]ssault and [b]attery." The Commonwealth does not argue that the evidence was sufficient to convict Felder of an assault only. Because we hold that the evidence was sufficient to convict Felder of a completed assault and battery, we do not address whether alternative grounds to affirm also exist.

"Because Code § 18.2-57 does not define assault or battery, we must look to the common law definition of the terms." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (citing *Clark v. Commonwealth*, 279 Va. 636, 641 (2010)). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Id.* at 330 (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). "It is not necessary that the touching 'result in injury to the [victim's] corporeal person. It is sufficient if it does injury to the [victim's] mind or feelings.'" *Id.* (alterations in original) (quoting *Wood*, 149 Va. at 405).

"Whether a touching is a battery, depends on the intent of the actor, not on the force applied." *Id.* (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 469 (2000)). "One cannot be convicted of assault and battery 'without an intention to do bodily harm—either an actual intention or an intention imputed by law.'" *Id.* (quoting *Adams*, 33 Va. App. at 468). "The unlawful intent may be imputed if the touching is '"done in a rude, insolent, or angry manner."'" *Id.* (quoting *Adams*, 33 Va. App. at 469). "An assault may occur even though the victim is not aware of any acts directed at him, provided the actor intends to touch offensively rather than accidentally or negligently." *Adams*, 33 Va. App. at 469 (citing *Park Oil Co., Inc. v. Parham*, 1 Va. App. 166, 170 (1985)).

The body-worn camera video shows Felder using her legs to resist being pulled out of the car. It shows that she braced her right leg under the steering wheel and then against the door handle while she wrapped her right arm through the openings in the steering wheel, sounding her car's horn. The video then shows Felder moving her left leg, and foot, upward toward Officer Randolph as she yelled, "You don't have that control over me." Moments later, Felder again moved her left leg, and foot, towards Officer Randolph, to a point outside the body-worn camera's frame, as Officer Randolph warns her, "Do not kick me. Do not!" Considered in conjunction with Officer Randolph's own affirmative testimony that Felder kicked him, the jury

could infer that Felder's later action was a kick, deliberately aimed at Officer Randolph as a means of keeping him from removing her from her car.

Felder's arguments that the Court should draw different inferences from the evidence were rejected by the jury. The jury was not bound to view the evidence as Felder does. "An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not. This remains so even when the factfinder *could* have found those facts or drawn those inferences but, exercising its factfinding role, elected not to do so." *Garrick*, 303 Va. at 182. The jury likewise was free to give whatever weight it thought proper to Felder's denying that she had kicked Officer Randolph. "The trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." *English v. Commonwealth*, 43 Va. App. 370, 371 (2004) (citations omitted). The record supports the trial court's denying Felder's motions to strike the charge.

II. Obstruction by threats or force

"[A]ny person who, by threats or force, knowingly attempts to intimidate or impede . . . any law-enforcement officer . . . lawfully engaged in his duties as such, . . . is guilty of a Class 1 misdemeanor." Code § 18.2-460(B). "To sustain a conviction under Code § 18.2-460(B), on the intent requirement, it is the 'intent to impede a police officer in the performance of his duties that is the gravamen of the statute.'" *Hamilton v. Commonwealth*, 69 Va. App. 176, 196 (2018) (quoting *Woodson v. Commonwealth*, 14 Va. App. 787, 795 (1992)). "This intent may be shown by the appellant's statements or conduct." *Id.* "As to the requirement of force, the term has been defined under Code § 18.2-460(B) as '[p]ower, violence, or pressure directed against a person or

thing.'"[7]  *Id.* (alteration in original) (quoting *Bennett v. Commonwealth*, No. 2029-08-2, slip op. at 4, 2009 Va. App. LEXIS 566, at *6-7 (Dec. 22, 2009).

"[A] conviction for obstruction of justice cannot be sustained merely on evidence that 'a person fail[ed] to cooperate fully with an officer or when the person's conduct merely render[ed] the officer's task more difficult but [did] not impede or prevent the officer from performing that task.'"  *Lucas v. Commonwealth*, 75 Va. App. 334, 344 (2022) (second, third, and fourth alterations in original) (quoting *Ruckman v. Commonwealth*, 28 Va. App. 428, 429 (1998)). "Obstruction requires 'actual hindrance or obstruction of the officer.'"  *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016) (quoting *Polk v. Commonwealth*, 4 Va. App. 590, 594 (1987)).  "It involves 'prevent[ing] the officer from performing his duty, as to "obstruct" ordinarily implies opposition or resistance by direct action.'"  *Id.* (alteration in original) (quoting *Jones v. Commonwealth*, 141 Va. 471, 479 (1925)).  We have found that a defendant's barring a door to keep police officers out caused a hinderance, requiring the officers to "kick[] it down." *Hamilton*, 69 Va. App. at 185.  We likewise have found that a defendant's action pushing an officer away as he attempted to handcuff him "impeded [the officer's] ability to detain him." *Lucas*, 75 Va. App. at 345.

Felder's actions were more than a mere failure to cooperate.  She braced herself in the car, extending her leg under the steering wheel against the door jamb, and then against the door handle, while she wrapped her arm through the openings in the steering wheel, forcibly resisting the police and obstructing their efforts to take physical custody of her.  It took more than two

---

[7] While the warrant charging the offense did not cite a particular subsection of Code § 18.2-460, the agreed jury instruction recited the elements of the offense defined in Code § 18.2-460(B).  *See Hamilton*, 69 Va. App. at 195 ("It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." (quoting *Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.*, 237 Va. 649, 652 (1989))).

minutes of continuous grappling, requiring the combined efforts of four police officers, to overcome that active resistance. Felder continued to kick at the officers after she was removed from the car until she was restrained. After she was restrained, she continued to struggle with the officers attempting to place her into the patrol car, to the point that they had to apply "kick stops." The record supports the trial court's denying Felder's motions to strike the charge.

## CONCLUSION

For these reasons, the trial court's judgment is affirmed, but we remand for the limited purpose of correcting a clerical error in the sentencing order.[8]

*Affirmed and remanded.*

---

[8] *Supra*, n.2.